IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| MICHAEL LYNN WALLS, <br> Institutional ID No. 1681654, <br> SID No. 5050496, <br><br> Plaintiff, <br><br> v. <br><br> JIMMY S. WEBB, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § Civil Action No. 1:20-CV-00005-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the Court, this civil action was transferred to the undersigned United States Magistrate Judge. Dkt. No. 7. Plaintiff has not consented to proceed before a magistrate judge. Therefore, in accordance with the Court's transfer order, the undersigned enters these findings and conclusions, and recommends that Plaintiff's claims in this action be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

I.  BACKGROUND

Plaintiff Michael Lynn Walls ("Walls"), an inmate currently incarcerated by the Texas Department of Criminal Justice ("TDCJ") and proceeding *pro se*, filed this 42 U.S.C. § 1983 action on January 8, 2020. Dkt. No. 1. Walls alleges constitutional violations arising out of his time at the TDCJ Middleton Unit in late 2019. *See id*. at 8. The Court granted Walls leave to proceed *in forma pauperis*, which subjects his complaint to the Court's preliminary judicial screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 8. Because Walls brings his suit against government officials, his Complaint is also subject to screening under 28 U.S.C. § 1915A.

1

Upon review of the Complaint, the Court ordered Walls to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Dkt. No. 16. Walls timely completed and returned the questionnaire. Dkt. No. 17. The undersigned has reviewed Walls's Complaint and his questionnaire responses, as well as authenticated records provided by the TDCJ. The following findings, conclusions, and recommendation are based on that review.

## II. LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint is one that lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that

courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pled must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.* 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

III.  DISCUSSION AND ANALYSIS

A.  <u>Walls's Claims</u>

In his Complaint, Walls brings claims against four defendants employed at the TDCJ Middleton Unit: Warden Webb, Assistant Warden Hammond, Major Atkinson, and Kitchen Captain Bobo-Isaac. Dkt. No. 1 at 3.

Walls alleges that he was incarcerated at Middleton from November 25, 2019 to December 28, 2019. Dkt. No. 17 at 1. During each day of his incarceration, he alleges that he observed birds in both Middleton offender dining rooms. Dkt. No. 1 at 7; Dkt. No. 17 at 1. These birds allegedly

perched on, and flew around equipment used for the serving, storage, and consumption of offender meals and drinks. *Id*. In addition to the birds themselves, Walls alleges that he observed feathers and bird feces in the dining rooms on several occasions. *Id*.

Walls further alleges that he observed the kitchen staff engage in improper handling of beverages by using drink containers contaminated by the birds. Dkt. No. 1 at 8; Dkt. No. 17 at 3. He alleges that kitchen staff permitted cross-contamination, prepared beverages without gloves and proper protective equipment, and that the equipment itself, including the drink pitchers, contained bird remnants. Dkt. No. 1 at 8. Walls alleges that staff permitted drink containers to sit on the floor and that the birds would perch on these containers, leaving feathers and feces around them. Dkt. No. 17 at 3.

Walls alleges that he drank the beverages prepared with the contaminated containers but did not know they were contaminated at the time. Dkt. No. 17 at 3. Walls states that he now knows the drink containers on the dining tables were contaminated because he observed the birds perched on those containers, leaving feces, feathers, and bugs. *Id*. He alleges he was told that the containers were cleaned on occasion and that he must drink the beverages or do without. *Id*.

Because of these conditions, Walls alleges that he became sick with "stomach issues" on several occasions. Dkt. No. 17 at 2, 4. Walls states that he did not seek medical attention because he thought his stomach issues were caused by the food at the time. *Id*. at 2. He also alleges he did not go to medical because he knew they would just tell him it was a stomach virus and then charge him a bill. *Id*. 4. Additionally, Walls states that he has suffered from severe allergies ever since his time at Middleton, but also admits he has received no diagnosis as to the cause of his allergies. *Id*. Walls further alleges that drinking bird feces exposed him to parasites that could cause health issues later. *Id*. at 3.

As relief, Walls seeks damages from each defendant in the amount of $5 million for each claim, amounting to a total of $40 million. Dkt. No. 1 at 6. Walls also requests that the birds and unsanitary conditions in the dining rooms at the Middleton Unit be "dealt with" so that he and "any other inmate" will not have to eat in those conditions again. Dkt. No. 17 at 6.

B. <u>Walls has not pleaded facts demonstrating personal involvement by any defendant.</u>

Walls alleges that it was the responsibility of TDCJ and the Middleton Unit to provide him with a safe and sanitary place to eat and that by allowing the birds to remain, the defendants violated his constitutional rights. Dkt. No. 17 at 1.

Claims of liability under § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility on the part of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant."); *Jacquez v. Procunier*, 801 F2d 789, 793 (5th Cir. 1986) ("In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendant's participation in the wrong alleged.").

Further, to hold a supervisor liable under § 1983, a prisoner must show "either [that] the supervisor personally was involved in the constitutional violation or that there is sufficient causal connection between the supervisor's conduct and the constitutional violation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F. 3d 681, 689 (5th Cir. 2003)). Section 1983 does not authorize supervisory liability based on *respondeat superior* or any theory of vicarious liability. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983"); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the

actions of subordinates on any theory of vicarious liability") (citations omitted). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

In the questionnaire, the Court asked Walls to provide all factual details regarding the personal involvement of Webb, Hammond, Atkinson, and Bobo-Isaac, all supervisors at Middleton. *See* Dkt. No. 16. But in his response regarding each defendant, Walls repeats the same conclusory allegations — that each defendant had a "responsibility to ensure that [Walls] and all inmates on TDCJ Middleton Unit [had a] safe and sanitary dining room to eat in," complaints were made and ignored, and despite knowing of the problem, each defendant did nothing. *Id*.

Although given an opportunity by the Court to state his best case, Walls has not provided any specific facts showing personal involvement by any defendant in either causing the allegedly unsanitary conditions in the Middleton dining rooms or engaging in improper food handling. For that reason alone, Walls's claims can be dismissed against each of the defendants for failure to state a claim.

C.  <u>Walls has not pleaded facts to support an Eighth Amendment conditions of confinement claim.</u>

Even if Walls had alleged personal involvement, the complained of conditions would constitute no more than a de minimis violation.  *See Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011).

Challenges to the sanitary conditions in a prison are considered challenges to the conditions of confinement. *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). While the caselaw recognizes that a lack of sanitary conditions may constitute a constitutional violation,

the prisoner in such cases "must demonstrate a pervasive pattern of serious deficiencies in providing for [the prisoner's] basic human needs." *Duvall*, 631 F.3d at 208 (quoting *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009)).  Moreover, prisoners are entitled only to "reasonably adequate hygiene and sanitation conditions."  *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)). Thus, an Eighth Amendment claim does not lie for sanitation conditions that may be less than ideal or not to the prisoner's liking, provided they are "reasonably sanitary."  *See Johnson v. Texas Bd. Of Criminal Justice*, 281 F. App'x 319, 322, 2008 WL 2337324, at *3 (5th Cir. 2008).

"The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted).  However, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

For a condition of confinement to provide the basis for liability under § 1983, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  This requires the satisfaction of two requirements.  First, the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need."  *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted). Second, the court must determine whether the prison officials were "deliberately indifferent to inmate health or safety."  *Id*.

The presence of birds in the offender dining rooms, while not ideal, does not rise to the level of seriousness necessary to satisfy the first condition above. Likewise, allegations of improper beverage handling by prison kitchen staff are insufficiently serious to establish constitutional liability.

"Prison and detention facilities are required to provide nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Walker v. Davis*, No. 6:17cv166, 2019 WL 2465298, at *11 (E.D. Tex. Jan. 10, 2019), *report and recommendation adopted sub nom. Walker v. Collier*, No. 6:17cv166, 2019 WL 1421152 (E.D. Tex. Mar. 28, 2019) (citation and internal quotation marks omitted). But while a prison must meet an inmate's basic human needs, it is not required to conform to cleanliness standards of the non-incarcerated world. *See generally Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *modified*, 688 F.2d 266 (5th Cir. 1982) (private world expectations and standards may be helpful, but do not represent the constitutionally required minimum). Ultimately, the Constitution does not protect prisoners from "discomfort and inconvenience" and prisoners "cannot expect the amenities, conveniences, and services of a good hotel." *Wilson*, 878 F.2d at 849 & n.5.

Demonstrating that the conditions were not objectively serious, Walls does not allege facts sufficient to conclude that the presence of the birds made him physically ill. The physical symptoms alleged by Walls were his "stomach troubles" and his allergies. Regarding the latter, Walls readily admits that the connection between his exposure to the birds at Middleton and his allergies is tenuous. And regarding his "stomach troubles," Walls admits they he did not seek medical attention at the time he experienced these symptoms and had thought they could be the result of the food, rather than the contaminated beverage containers. The authenticated records

8

provided by TDCJ confirm Walls's account that he did not seek medical care for his stomach troubles, or indeed because of any general concern resulting from his exposure to the birds.

Walls has not alleged facts demonstrating such pervasive and serious deficiencies in providing for his basic human needs that would constitute unconstitutional punishment. And Walls fails to allege the type of serious harm or risk of serious harm that would trigger a constitutional violation. *See Walker*, 2019 WL 2465298, at *11 (allegations that chow hall was "filthy and overrun with birds and insects" did not constitute a constitutional violation); *see also Encalade v. Stacks,* No. 9:04cv214, 2006 WL 1582468 (E.D. Tex. May 30, 2006), *appeal dismissed* (rejecting sanitation claim brought by inmate that drinking pitchers and cups were not cleaned sufficiently and had food particles left in them, where inmate failed to allege anything more than a general complaint that his stomach hurt).

Accordingly, for these reasons, Walls's claims should be dismissed as frivolous and/or for failure to state a claim.

D.  Wall's request for injunctive relief should be denied.

Finally, even if Walls has stated a claim, to the extent that Walls requests injunctive relief that the birds and unsanitary conditions in the dining rooms at the Middleton Unit be "dealt with," so that he and other offenders do not have to endure these conditions any longer, that relief should be denied. As Walls references in his own filings, he has been transferred from the Middleton Unit to the Tulia Unit, rendering his claim for injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Walls is no longer under the continued threat of danger from the Middleton birds. And Walls cannot vindicate the rights of other Middleton inmates in this civil rights case by requesting injunctive relief on their behalf.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the District Court DISMISS Walls's Complaint and all claims therein with prejudice as frivolous and for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  This dismissal shall constitute a "strike" within the meaning of 28 U.S.C. § 1915(g).[1]

It is, therefore, ORDERED that this case be transferred back to the docket of Senior United States District Judge Sam R. Cummings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[1] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

IT IS SO ORDERED this 31st day of March, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

11